UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME SWEEZER,                                Case  No. 11-12351

            Plaintiff,                        Arthur J. Tarnow
vs.                                            United States District Judge

DEBRA SCUTT, *et. al.*,                        Michael Hluchaniuk
                                               United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION TO DISMISS (Dkt. 10)**

## I.     PROCEDURAL HISTORY

Plaintiff, a prisoner in the custody of the Michigan Department of

Corrections (MDOC) and currently housed at the Ryan Correctional Facility

(RRF), filed this prisoner civil rights action on May 27, 2011.  (Dkt. 1).  Plaintiff

alleges that the following defendants violated his rights under the United States

Constitution:

> 1.  Debra Scutt, G. Robert Cotton Correctional Facility (JCF) Warden;
> 2.  Richard McGill, RRF Transportation Officer;
> 3.  Glenn King, JCF Corrections Officer;
> 4.  Diane Coggins, JCF Assistant Resident Unit Supervisor;
> 5.  Quincie Cooper, JCF Resident Unit Manager;
> 6.  Larry McMillan, JCF Grievance Coordinator.

(Dkt. 1).  On June 24, 2011, this case was referred to the undersigned for all

pretrial matters by District Judge Arthur J. Tarnow.  (Dkt. 5).

Defendants filed a motion to dismiss on September 6, 2011.  (Dkt. 10).

Plaintiff filed a response to defendants' motion on October 7, 2011.  (Dkt. 12).

This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' motion to dismiss be **GRANTED**.

## II.   STATEMENT OF FACTS

Plaintiff alleges that defendants violated the First, Fourth, Eighth, and

Fourteenth Amendments of the United States Constitution when defendants

mishandled plaintiff's property.  (Dkt. 1, pp. 27-32).  Specifically, plaintiff alleges

that defendants improperly transferred plaintiff's property from one prison facility

to another, and that defendants improperly withheld and disposed of plaintiff's

property.  *Id.*

On August 10, 2010, plaintiff packed his personal property in anticipation

of plaintiff's transfer to JCF.  (Dkt. 1, p. 2).  Plaintiff states that after packing,

RRF Correctional Officer Hill placed seals on plaintiff's property, which consisted

of a television in a box, a typewriter in a box, a duffle bag, and two footlockers

(one marked "legal").  (Dkt. 1, p. 3).  Plaintiff asserts his property was properly

packed and in good condition.  *Id.*  Plaintiff also states that the boxes and

footlockers fully contained his property, with nothing "sticking or hanging

out."  *Id.*

Plaintiff arrived at JCF on August 11, 2010, and requested his property the following day.  *Id.*  Plaintiff states that defendant King informed plaintiff's unit officer that the property had been sent to another facility.  *Id.*  According to plaintiff, defendant King did not know why this happened.  (Dkt. 1, pp. 3-4).

On August 14, 2010, plaintiff was called to JCF's property room. (Dkt. 1, p. 4).  When he arrived, plaintiff saw that the seals on his property had been cut.  *Id.*  Plaintiff also discovered that his personal clothing, an extension cord, and food and drink items were missing from his duffle bag.  *Id.*  Plaintiff alleges that defendant King then tried to provoke plaintiff by yelling, "Thats [sic] all the property you are going to get."  *Id.*  Plaintiff states that he asked defendant King about the missing items to which King replied, "I told you that was all you are going to get."  *Id.*  Plaintiff also states that defendant King told plaintiff, "I advise you to get out of the property room now because I'm tired of your mouth."  *Id.*  Plaintiff then took his duffle bag and television and left the property room.  *Id.*

After placing his property in his cell, plaintiff went to the officer's desk to obtain a grievance form for his missing items.  (Dkt. 1, p. 5).  While there, plaintiff alleges that Resident Unit Officer Johnson told plaintiff that defendant King admitted to taking plaintiff's property.  *Id.*  Plaintiff then filed a grievance on defendant King.  *Id.*

Report and Recommendation
Motion to Dismiss
*Sweezer v. Scutt, et. al.*; Case No. 11-12351

Also, on August 14, 2010, plaintiff wrote twice to defendant McMillan for a step II grievance form. *Id.* Plaintiff states that he "would realize later that he had to constantly write the Coordinator to receive a grievance form . . . ." *Id.* Plaintiff alleges that defendant McMillan "was deliberately trying to impede on Plaintiff's right to file a grievance by trying to discourage him by not replying to his kites." *Id.* Plaintiff filed a grievance against defendant McMillan for this on September 22, 2010, stating that defendant McMillan was "not doing his job, [not] providing Plaintiff with 2nd step grievance forms, and not providing identifying numbers for . . . documents." (Dkt. 1, p. 19).

Plaintiff states that on August 16, 2010, defendant Coggins gave plaintiff a Notice of Intent to conduct an administrative hearing, which defendant McGill had written on August 11, 2010, regarding excess personal property. (Dkt. 1, p. 6; Dkt. 12, p. 33). The notice stated that plaintiff's footlockers were bulging, damaged, and exceeded a 50-lb recommended weight limit. (Dkt. 12, p. 33). The notice also stated that a piece of clothing stuck out of one of the footlockers and that the duffle bag could not be secured properly. *Id.* Plaintiff alleges that defendant McGill "deliberately broke the latches on both footlockers, took the lock off plaintiff's property, and removed several metal side rails off plaintiff's footlockers, thus the justification for Richard McGill to declare the footlockers were not in working order, and said that plaintiff had clothing hanging out of the

duffle bag and foot locker." (Dkt. 1, p. 6). Plaintiff also alleges that defendant McGill altered and falsified the transportation sheet accompanying plaintiff's property during transfer and that defendant McGill weighed plaintiff's property and held it for three days, which plaintiff states is a violation of MDOC Policy Directive 04.07.112. *Id.*

The next day, on August 17, 2010, plaintiff submitted a grievance against defendant McGill regarding these allegations. (Dkt. 1, p. 7). Plaintiff states that defendant McMillan rejected the grievance "due to jurisdictional issues" and directed plaintiff to send the grievance to RRF. (Dkt. 1, p. 7). RRF's Grievance Coordinator rejected the grievance also, stating that due process would be reached through the Notice of Intent hearing instead of the grievance process. *Id.* Plaintiff states that when he approached defendant McMillan about the rejection from RRF, defendant McMillan said there was nothing he could do. (Dkt. 1, p 8).

On August 16, 2010, the same day that plaintiff received the Notice of Intent to conduct an administrative hearing, plaintiff asked defendant Coggins for cosmetics and legal work from one of his footlockers. (Dkt. 1, p. 8). Defendant Coggins replied that plaintiff could not have any more property because his duffle bag was almost full. *Id.* When plaintiff told defendant Coggins that he would file a grievance against her, defendant Coggins' alleged response was, "You're not going to get any property when I'm done with you." *Id.* Plaintiff states that

defendant Coggins' "disposition toward Plaintiff was very aggressive and threatening as if she had something personal against Plaintiff." *Id.* Since plaintiff was unable to get his property from his footlocker, he borrowed personal hygiene products and stamps from other prisoners. *Id.* Plaintiff also alleges that defendant Coggins denied plaintiff access to the courts when she prevented plaintiff from accessing the legal materials in his footlocker. *Id.*

On August 19, 2010, plaintiff wrote a letter to JCF Deputy Ford asking for "assistance in looking into this matter concerning his personal property and not being able to get any personal hygiene or his legal work . . . ." (Dkt. 1, p. 10). On August 24, 2010, plaintiff received a response stating that defendant Coggins had been contacted regarding the issue and that defendant Coggins reported that plaintiff "refused to cooperate with the hearing and told [Coggins] to do whatever she wants to do with plaintiff's property." *Id.* Plaintiff denies saying this to defendant Coggins. *Id.* Plaintiff states he also wrote a letter to defendant Scutt in an attempt to seek help but did not receive a reply. *Id.*

The administrative hearing regarding plaintiff's property was held on September 2, 2010. *Id.* According to plaintiff, defendant Coggins instructed plaintiff to sort through the property in his cell and select the items plaintiff wished to send home. (Dkt. 1, p. 11). According to plaintiff, defendant Coggins stated, "Do you want to hold this hearing or what, you have excess property and

you're sending it home, now put your TV in the duffle bag and whatever do [sic] not fit, you're sending home." *Id.* Plaintiff questioned putting his television in the duffle bag because it was originally stored in a box. *Id.* Plaintiff stated that being forced to put the television in his duffle bag was a violation of policy. *Id.* Defendant Coggins allegedly replied, "If you do not want to have the hearing then we can stop now, and I'll have it all thrown away. I don't want to hear another word out of you . . . ." *Id.* Plaintiff states that defendant Coggins ultimately selected the items for plaintiff to send home on her own instead of allowing plaintiff to do so. *Id.*

Plaintiff alleges that defendant Coggins then took the following items belonging to plaintiff: personal hygiene products, personal mail, religious material, a bible, photographs, state-issued shoes, hangers, a writing tablet, metered envelopes, pens, a bowl, grievances, receipts for purchased property, and drinking cups. *Id.* Plaintiff states that defendant Coggins put these items into a bag, declared them to be abandoned property, and announced she was going to throw them away. (Dkt. 1, p. 12). Plaintiff states that he pleaded with defendant Coggins to keep the items, saying, "I can easily make these things fit into the duffle bag, or I can send it home according to policy," but defendant Coggins did not return the items. *Id.*

Report and Recommendation
Motion to Dismiss
*Sweezer v. Scutt, et. al.*; Case No. 11-12351

Plaintiff states that defendant Coggins next made plaintiff transfer his legal papers from one of plaintiff's footlockers to a plastic bag. (Dkt. 1, pp. 12-13). Plaintiff alleges that defendant Coggins sorted through items in the other footlocker, "indiscriminately telling [plaintiff] to send this item home, and the next she would make the determination that [plaintiff] would have to throw the next item away, all the time the plaintiff was stating he would rather send it home. Nevertheless, [defendant Coggins] would continue to throw it in the trash." (Dkt. 1, p. 13). Plaintiff alleges that when he left to go to his cell for count, defendant Coggins continued sorting and throwing away such things as food and drink items, personal hygiene products, and papers. *Id.* Plaintiff states that when he told defendant Coggins that "according to policy he was allowed to either send property home or throw it away, and that it was his choice to pick the things that he wanted to keep . . . ," defendant Coggins replied, "Well these things has [sic] been thrown away and you cannot get them back." *Id.*

After defendant Coggins finished sorting, plaintiff requested personal hygiene items from his footlocker to replace the ones that defendant Coggins removed from plaintiff's cell. (Dkt. 1, p. 14). Plaintiff states that defendant Coggins would not let him have the products until he purchased a new footlocker because the current one was broken. *Id.* Plaintiff then asked for a contraband removal slip for the things defendant Coggins confiscated and alleges that

Report and Recommendation
Motion to Dismiss
*Sweezer v. Scutt, et. al.*; Case No. 11-12351

defendant Coggins replied, "You're not getting anything and I'm not writing nothing, why don't you write another grievance?"  *Id.*  In response to plaintiff's pleas for his photographs, defendant Coggins allegedly said, "Quit your crying, I'll teach you about having so much property."  *Id.*

On September 2, 2010, the same day as the administrative hearing, plaintiff received a Notice of Intent stating plaintiff's property would be destroyed in ten days since it had been in the property room since June 6, 2010; however, plaintiff did not arrive at JCF until August 11, 2010.  (Dkt. 1, pp. 3, 15).  Plaintiff states that the administrative hearing's disposition report gave him 30 days to send his property home, which conflicted with the 10-day deadline in the Notice of Intent. (Dkt. 1, p. 16).

Also, on September 2, 2010, plaintiff filed two grievances against defendant Coggins.  *Id.*  The first was for taking food and drink out of plaintiff's footlocker. *Id.*  The second was for taking photographs, hygiene items, shoes, grievances, letters, and legal pads from plaintiff's cell.  *Id.*  Plaintiff states he filed separate grievances because defendant Coggins' removal of items from plaintiff's footlocker constituted a separate incident from the removal of items from plaintiff's cell.  *Id.*  Plaintiff's second grievance was denied because it had the same basis as the first grievance.  (Dkt. 1, p. 37).  In addition, plaintiff also filed a

grievance to appeal the administrative hearing disposition on September 2, 2010. (Dkt. 1, p. 16).

On September 10, 2010, a hearing regarding plaintiff's legal property was held. (Dkt. 1, p. 17). Plaintiff states the hearing determined that plaintiff should be allowed to keep all of his legal property. *Id.*

On September 19, 2010, plaintiff wrote to defendant King, stating that he wanted to send home the property he had stored in the property room. (Dkt. 1, p. 19). On September 23, 2010, defendant Coggins asked if plaintiff had requested his items in the property room be sent home, to which plaintiff answered yes. (Dkt. 1, p. 20). Plaintiff then states that he was not allowed to mail this property home and was not given a reason why. *Id.* Plaintiff states that he filed a grievance because of this and that defendant McMillan neither responded to the grievance nor provided plaintiff a grievance identification number. *Id.*

Plaintiff alleges that on October 12, 2010, defendant Cooper lied about having interviewed plaintiff with regard to one of his grievances. (Dkt. 1, p. 21). Plaintiff denies being interviewed, stating that he did not know who defendant Cooper was at that time. *Id.* Plaintiff states that defendant Cooper "didn't have a clue as to what was going on, nor, did she investigate, she just went on face value to what [defendant] Coggins said." *Id.*

On October 15, 2010, plaintiff wrote a grievance "concerning him retrieving his property out of the property room per Hearing Disposition and not being allowed to send his property out." *Id.* In addition, on October 16, 2010, plaintiff wrote another grievance, this one "pertaining to a 6-month financial statement [plaintiff] had to send to the Courts with his legal work . . . ." *Id.*

On November 4, 2010, plaintiff again requested that his items in the property room be mailed home, but he was not allowed to do so. *Id.* Ten days later on November 14, 2010, plaintiff alleges that he was informed that defendant Coggins "went to the property room and told [defendant King] to throw away all of Plaintiff's property and footlockers." *Id.* Plaintiff alleges that defendants Coggins and King did this "in retaliation because both of them were aware of the fact that Plaintiff was still in the appeal stages of this process concerning his property . . . ." *Id.*

On November 14, 2010, plaintiff filed another grievance "concerning [defendant Coggins] and [defendant King] for deliberately throwing away all of Plaintiff's property because he chose to exercise his right to file [a] grievance." (Dkt. 1, pp. 22-23). On November 24, 2010, defendant Coggins called plaintiff to her office to discuss the grievance. Plaintiff declined to discuss it with her and states that "per policy [defendant Coggins] is not the one to conduct the interview and the Plaintiff did not want to participate in the interview

process." (Dkt. 1, p. 23). Plaintiff alleges that defendant Coggins called plaintiff a coward and liar for refusing to discuss the grievance. *Id.* Following this encounter, plaintiff wrote a grievance on defendant Coggins "for trying to interview him on [a] grievance he wrote of her and [defendant King], and for calling him a "Coward" and a "Liar", so she could try and send Plaintiff to segregation." (Dkt. 1, p. 24). Defendant Cooper's response to the grievance on December 2, 2010, states that she interviewed plaintiff on this grievance, but plaintiff denies this. *Id.*

On December 22, 2010, plaintiff filed another grievance on defendant Coggins for directing a prison employee to take some of plaintiff's photographs, religious material, and grievances to the trash compactor. (Dkt. 1, p. 25). Defendant Scutt responded to this grievance approximately three months later on March 15, 2011. *Id.* Plaintiff states that because the reply was late, plaintiff "exercised his right to proceed to the third step in compliance with Policy Directive 03.02.130(CC)." *Id.*

On March 21, 2011, plaintiff sent the Acting Director of MDOC, Richard McKeon, a declaratory ruling request to exhaust all pending grievances. *Id.* Plaintiff received a reply on April 5, 2011, stating, "If you do not receive a ruling within 30 days of March 23, 2011 you may consider your request as denied . . . ." (Dkt. 1, p. 56). Plaintiff does not state whether he received a reply. Also during

March 2011, plaintiff enlisted the help of a group named American Friends

Service Committee, who wrote an email to defendant Scutt inquiring about

plaintiff's property.  *Id.*  Plaintiff states that defendant Scutt did not reply to the

email.  *Id.*

Plaintiff alleges that defendants' actions described above violated plaintiff's

First, Fourth, Eighth, and Fourteenth Amendment rights.  Plaintiff seeks the

following relief for his alleged constitutional violations:

> Compensatory damages of $10,000 from each defendant;
> Punitive damages of $50,000 from each defendant;
> Replacement of two footlockers, a Brothers model 250 typewriter, a
> radio, two sweat suits, and a leather jacket;
> Any "such other relief as it may appear Plaintiff is entitled;"
> An "injunction prohibiting Prison Officials from transferring Plaintiff
> until all legal action is complete . . . ."

(Dkt. 1, p. 33).

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting,

*Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide

the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted).  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting, *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted).  The

Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2).  Such is not the case here.  Thus, when applying *Twombly*, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

B.   Due Process

Plaintiff alleges that defendants violated the Fourteenth Amendment when defendants violated MDOC policy regarding the handling and disposal of plaintiff's property.  (Dkt. 1, pp. 27-32).  Defendants argue that a Fourteenth Amendment violation cannot occur when there are adequate post-deprivation remedies.  (Dkt. 11, p. 28).  Plaintiff argues in his response to defendants' motion to dismiss that state remedies for Fourteenth Amendment due process claims are irrelevant because "[p]laintiff's claims of deprivation of property was done in retaliation against Plaintiff exercising his 1st Amendment right.. ."  (Dkt. 12, p. 6).

Under the Fourteenth Amendment, states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. With regard to state actors, the Supreme Court held that "intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 469 U.S. 517, 533 (1984). Therefore, in order for plaintiff to claim deprivation of property by a state actor without due process of law, "the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). The Sixth Circuit has held that Michigan provides several adequate post-deprivation remedies for redressing deprivation of property, including:

> Michigan Court Rule 3.105 that allows an action for claim and delivery;
>
> Mich. Comp. Laws § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained; and
>
> Mich. Comp. Laws § 600.6401, the Michigan Court of Claims Act, which establishes a procedure to compensate for alleged unjustifiable acts of state officials.

*Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995).

Report and Recommendation
Motion to Dismiss
*Sweezer v. Scutt, et. al.*; Case No. 11-12351

As to plaintiff's retaliation allegations, they are irrelevant here in evaluating plaintiff's Fourteenth Amendment due process claim. Retaliation claims may implicate First Amendment rights and that question is addressed later in this decision. Plaintiff has not pleaded or proven that state remedies are inadequate for addressing his deprivation of property. *Victory*, 721 F.2d at 1066. Therefore, plaintiff's Fourteenth Amendment due process claim must be dismissed.

C.   Denial of Access to Courts

Plaintiff alleges that defendant Coggins denied plaintiff access to the courts when she did not give plaintiff his six-month financial statement." (Dkt. 1, p. 31). Plaintiff also alleges that defendant Coggins' denied plaintiff access to the courts when defendant Coggins' prohibited plaintiff from accessing legal documents in plaintiff's footlocker. (Dkt. 1, pp. 8-9). Defendant argues that plaintiff fails to state a claim because plaintiff has not established actual injury resulting from not receiving these documents. (Dkt. 10, pp. 14-15).

Prisoners have a constitutional right of meaningful access to the courts to attack their sentences or challenge conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To state a claim under § 1983, the prisoner must allege that he was actually denied adequate access to the courts. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). "To meet this requirement, a plaintiff must show that the actions of the prison officials

"hindered the prisoner's efforts to pursue a nonfrivolous claim." *Horacek v. Seaman*, No. 2:08-CV-10866, 2009 U.S. Dist. LEXIS 82451, at *13 (E.D. Mich. Aug. 20, 2009). To state a claim for denial of access to the courts, a prisoner must also demonstrate actual prejudice to pending or contemplated litigation. *Lewis*, 518 U.S. at 351. Examples of actual prejudice include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline. *Id.*; *Walker*, 771 F.2d at 932.

Plaintiff's complaint states that not receiving his financial statement prevented him from "complet[ing] the business with the Court that Plaintiff had ongoing with his criminal matter . . . ." (Dkt. 1, p. 31). Plaintiff's complaint also states generically that plaintiff "could not respond to the Courts" because defendant Coggins' denied plaintiff his legal papers. (Dkt. 1, p. 8-9). In plaintiff's response to defendants' motion to dismiss, plaintiff states more specifically that he was "prohibited from timely filing of Michigan Court Rule 6 504(B)(3), which authorizes plaintiff to file a Reconsideration Motion . . . ." (Dkt. 12, p. 8). However, plaintiff has not demonstrated how the lack of financial statement and unspecified legal documents denied him the ability to file the reconsideration motion. Thus, plaintiff's claim is unsupported by specific facts of causation. "Conclusory, unsupported allegations of the deprivation of rights protected by the United States Constitution or federal laws are insufficient to state

a claim." *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003); *see also Boone v. Spurgess*, 385 F.3d 923, 931 (6th Cir. 2004) (holding that plaintiff must present evidence showing that defendant's actions rendered a court remedy ineffective). Since plaintiff's denial of access to courts allegation is unsupported by allegations of specific acts of causation, plaintiff's denial of access to courts claim must be dismissed.

  D. <u>Cruel and Unusual Punishment</u>

  Plaintiff alleges that defendants violated the Eighth Amendment's ban on cruel and unusual punishment when defendant Coggins' denied plaintiff his hygiene items and called plaintiff a liar and a coward.  (Dkt. 1, pp. 29-31). Defendant argues that plaintiff's Eighth Amendment claims should be dismissed because "[a]llegations of verbal harassment and temporary denial of hygiene items by prison officials toward an inmate do not constitute punishment within the Eighth Amendment."  (Dkt. 10, p. 16).  However, plaintiff states in his response to defendants' motion to dismiss that "plaintiff did not state that his Eighth Amendment was denied by verbal harassment or denial of hygiene items." (Dkt. 12, p. 9).  Plaintiff asserts that his Eighth Amendment claim results from defendants throwing away photographs of family members and friends, which plaintiff alleges defendants did "deliberately and maliciously."  *Id.*

The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense.  In its application by the courts, the amendment actually protects a wide assortment of interests.  It proscribes disproportionate punishments, *Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion); *See generally Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986) (stating the nature and types of interests protected by the Eighth Amendment).  The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Eighth Amendment imposes affirmative duties on prison officials, who must provide humane conditions of confinement, must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable

measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), quoting, *Hudson*, 468 U.S. at 526-27.

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977), quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). First, the deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 833. "[E]xtreme deprivations are required . . . and only deprivations denying the minimal civilized measure of life's necessities are grave enough to create a violation of the Cruel and Unusual Punishment Clause." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citations and internal quotation marks omitted). Second, the prisoner's pain must be wantonly inflicted and unnecessary, and the prison official must have a deliberately indifferent state of mind to the inmate's health or safety. *Farmer*, 511 U.S. at 833. Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Id.* at 127-28.

Plaintiff's claim of having his photographs confiscated cannot be objectively viewed as a denial of the minimal civilized measure of life's necessities.  *See Jones v. Caruso*, No. 2:11-cv-65, 2011 WL 3740579, at *9 (W.D. Mich. Aug. 24, 2011) (holding that confiscation of an inmate's property does not rise to the level of an Eighth Amendment violation).  Therefore, plaintiff has failed to state an Eighth Amendment claim against defendants for confiscation of personal property, and his claim must be dismissed.

E.    First Amendment Retaliation

Plaintiff alleges that defendant Coggins violated the First Amendment by engaging in retaliation in concert with defendant King.  (Dkt. 1, pp. 29-31). Plaintiff alleges that defendant Coggins confiscated plaintiff's photos, religious materials, personal letters, and documents because plaintiff filed grievances against her.  (Dkt. 1, p. 30).  Defendant argues that retaliation could not have occurred because plaintiff did not file his grievance until after his items were confiscated.  (Dkt. 10, p. 19).

To establish a First Amendment retaliation claim, plaintiff must prove that: (1) plaintiff engaged in activities protected by the Constitution or statute; (2) defendant then took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was "motivated in substantial part by a desire to punish an individual for

exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386, 394 (6th Cir. 1999). If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.* at 399.

Defendants argue that plaintiff cannot establish causation because plaintiff "didn't even mention filing a grievance until after [defendant Coggins] allegedly denied [plaintiff's] request" for access to plaintiff's personal property. (Dkt. 10, p. 19). Plaintiff alleges that defendant Coggins refused to give plaintiff his cosmetics and legal work from his footlockers on August 16, 2010. (Dkt. 1, p. 8). Plaintiff states that before this encounter he had never seen defendant Coggins. *Id.* Plaintiff alleges that on September 2, 2010, defendant Coggins again denied plaintiff his items when defendant Coggins confiscated plaintiff's hygiene items, personal documents, photographs, religious material, shoes, and food and drink items. *Id.* After the alleged confiscation on September 2, 2010, plaintiff filed his first two grievances against defendant Coggins for both incidents. (Dkt. 1, p. 16). Since the alleged adverse action of having property withheld occurred before plaintiff engaged in protected activity by filing grievances, plaintiff cannot show that the confiscation of his personal items was motived by the grievances. Therefore, plaintiff cannot establish a causal connection, and plaintiff's First Amendment retaliation claim must be dismissed.

Report and Recommendation
Motion to Dismiss
*Sweezer v. Scutt, et. al.*; Case No. 11-12351

F.     Personal Involvement

Plaintiff alleges that defendant Scutt violated the Fourteenth Amendment when defendant Scutt showed deliberate indifference towards plaintiff's property issues, did not investigate plaintiff's issues, and failed to reply to a letter sent by the American Friends Service Committee.  (Dkt. 1, p. 27).  Defendant argues that this claim should be dismissed because liability under a § 1983 claim must be based on active unconstitutional behavior and plaintiff has not alleged personal involvement by defendant Scutt.  (Dkt. 10, p. 20).  Plaintiff argues that defendant Scutt's personal involvement is demonstrated by defendant Scutt sanctioning the conduct of other prison employees who destroyed plaintiff's property, by refusing to act on an email from the American Friends Service Committee informing defendant Scutt of their investigative findings regarding plaintiff's property, and by allowing a 10-day Notice of Intent to be produced which had an incorrect date on it.  (Dkt. 12, p. 12).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Liability under § 1983 "may not be imposed simply because a supervisor denied an administrative grievance or failed to act upon information contained in a grievance." *Hull v. Baker*, No. 1:11-cv-

623, slip op. at 8 (W.D. Mich. 2011).  Nor can liability be based on a mere failure to act.  *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The plaintiff must show that the defendant was personally involved.  *Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976).

Plaintiff cites a Second Circuit case, *Williams v. Smith*, 781 F.2d 319, 322-23 (2d Cir. 1986), stating that the case "held that in particular Wardens . . . who are designated to decide disciplinary appeals have a duty to conduct at least a minimal investigation when confronted with evidence of due process violations . . . ." (Dkt. 12, p. 12).  However, decisions of one circuit are not binding on other circuits absent an overriding Supreme Court decision, which is not the case here.  This Court is bound by the Sixth Circuit's holding that § 1983 claims require a showing of personal involvement and that liability cannot be based on a failure to act.  *Shehee*, 199 F.3d at 300 ("At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.").  Here, plaintiff's allegations that defendant Scutt showed deliberate indifference, failed to investigate, and failed to reply to an email demonstrate failure to act, rather than personal involvement.  Since plaintiff cannot show personal involvement sufficient to impose liability under § 1983, his claims against defendant Scutt must be dismissed.

G.    Effective Grievance Procedure

Plaintiff alleges an ineffective grievance procedure because defendant McMillan rejected one of plaintiff's grievances for complaining about the same issue which was addressed in a previous grievance and because plaintiff had to constantly request grievance forms from defendant McMillan.  (Dkt. 1, pp. 17, 32).  In addition, plaintiff states that defendant Cooper answered plaintiff's grievances late and failed to properly investigate one of plaintiff's grievances. (Dkt. 1, p. 31-32).  Defendants argue that these claims should be dismissed because prisoners have no constitutional right to an effective grievance procedure. (Dkt. 10, p. 3).  Plaintiff asserts that he has "a protected right to redress his grievance under the 1st Amendment and Defendant deprived Plaintiff of this on crucial grievances."  (Dkt. 12, p. 14).

A prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure.  *See e.g.*, *Keenan v. Marker*, 23 Fed.Appx. 405, 407 (6th Cir. 2005) (There is no inherent constitutional right to an effective prison grievance procedure.).  Indeed, as explained by the Eighth Circuit, "[a prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993), quoting *Azeez v.*

*DeRobertis*, 568 F.Supp. 8 (N.D. Ill. 1982).  Moreover, failure to reply to prison grievances is not sufficient to state a § 1983 claim.  *Lee v. Mich. Parole Bd.*, 104 Fed.Appx. 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *McGee v. Grant*, 863 F.2d 883, 1988 WL 131414, *1 (6th Cir. 1988) ("[I]nmate grievance procedures are not constitutionally required in state prison systems, therefore, any failure on the part of defendants to follow grievance procedures does not give rise to a § 1983 claim."); *Greer v. DeRobertis*, 568 F.Supp. 1370, 1375 (N.D. Ill. 1983) (holding that officials' failure to respond to grievance letter does not violate constitutional or federal statutory rights).  Therefore, to the extent that plaintiff's claims allege that prison officials failed to respond to plaintiff's grievances or improperly conducted grievance procedures, they fail to state a claim under § 1983 and must be dismissed.

    H.   <u>Qualified Immunity</u>

      Defendants argue they are entitled to qualified immunity because they are state employees who acted reasonably in their official capacities.  (Dkt. 10, p. 4).  Plaintiff argues that defendants are not entitled to qualified immunity because plaintiff alleges defendants' behavior was retaliatory.  (Dkt. 12, p. 15).

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that defendants are not entitled to qualified immunity.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) ("The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.").

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation.  *Saucier v. Katz*, 533 U.S. 194 (2001).  The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right."  *Id.* at 201.  If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established."  *Id.*  If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

2:11-cv-12351-AJT-MJH   Doc # 28   Filed 08/03/12   Pg 29 of 33   Pg ID 357

Recently, the Supreme Court revisited their decision in *Saucier* and concluded that the mandatory order of the two-part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244.

Here, plaintiff argues in his response to defendants' motion to dismiss that "defendants are not entitled to Qualified Immunity based upon the fact of the record that defendant's [sic] actions were rooted in retaliatory conduct . . . ." (Dkt. 12, p. 15). However, as described above, the alleged retaliatory conduct

Report and Recommendation
Motion to Dismiss
*Sweezer v. Scutt, et. al.*; Case No. 11-12351

29

occurred before plaintiff's protected activity; therefore, plaintiff's argument regarding retaliation is without merit.

The balance of plaintiff's claims not detailed above can be dismissed here under qualified immunity. These include plaintiff's claims that defendants McGill and King mishandled plaintiff's property and did not follow prison policy. (Dkt. 1, pp. 28-29). First, plaintiff alleges that plaintiff McGill "seized" plaintiff's property, damaged it, and took it to another prison facility. (Dkt. 1, p. 28). Next, plaintiff alleges that defendant King lied about the location of plaintiff's property, cut seals off of plaintiff's property, and gave contradictory answers in response to plaintiff's grievances. (Dkt. 1, p. 28-29).

The Supreme Court has held that the Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams*, 464 U.S. 327, 332 (1986). "Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required." *Id.* at 333 (citation and internal quotation marks omitted). Furthermore, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *McVeigh v. Bartlett*, No. 94-2347, 1995 U.S. App. LEXIS 9506, at *2 (6th Cir.

Apr. 21, 1995) ("Policy directive simply does not create a protectable liberty interest.").

Mishandling, damaging, and lying about the location of plaintiff's property amount to alleged torts and cannot be construed as violations of plaintiff's constitutional rights. Likewise, giving contradictory answers to a prison grievance is not a constitutional violation. Without a violation of plaintiff's constitutional rights, defendants cannot be denied qualified immunity. Therefore, these claims must be dismissed. In fact, all of plaintiff's claims may be dismissed via qualified immunity because none are supported by evidence that a constitutional violation has occurred.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

Report and Recommendation
Motion to Dismiss
*Sweezer v. Scutt, et. al.*; Case No. 11-12351

31

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 3, 2012                          s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>August 3, 2012</u> , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Allan J. Soros</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: <u>Jerome Sweezer, ID# 169468, CHIPPEWA CORRECTIONAL FACILITY, 4269 W. M-80, Kincheloe, MI 49784</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov