UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME SWEEZER,

Plaintiff,

v.

DEBRA SCOTT, ET AL.,

Defendants.

_____/

Case No. 11-12351

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE MICHAEL J.
HLUCHANIUK

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[44] AND DIRECTING PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING**

On May 27, 2011, Plaintiff, a pro se prisoner, brought the instant suit under

42 U.S.C. § 1983 against Defendant Coggins, Defendant King, and other

defendants.  On September 28, 2012, the Court entered an Order [32] dismissing

the other defendants and several of Plaintiff's claims.  However, the Court ruled

that Plaintiff could proceed with his First Amendment retaliation claim against

Defendant Coggins and King, as well as his claim that Defendant Coggins violated

his constitutional right of access to the courts.  On October 3, 2014, Defendants

filed a Motion for Summary Judgment [44] on both of these claims.  Plaintiff filed a Response [45] on October 21, 2014.

For the reasons stated below, Defendants' Motion for Summary Judgment [44] is **GRANTED** with respect to Plaintiff's access-to-courts claim.  The Court will postpone its decision on the motion with respect to Plaintiff's retaliation claim pending the submission of supplemental briefs, as described in more detail below.

## FACTUAL BACKGROUND

Plaintiff is a prisoner confined by the Michigan Department of Corrections (MDOC).   On August 11, 2010, Plaintiff was transferred from the Ryan Correctional Facility to the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan.  Plaintiff brought items of personal property to JCF, including a TV, a typewriter, a duffel bag containing personal items, and two footlockers containing other personal items and legal materials.  On the day of the transfer, former defendant Richard McGill, a corrections officer, wrote a Notice of Intent to Conduct an Administrative Hearing (NOI) alleging that Plaintiff's footlockers were contraband because they contained excess property.

The day after Plaintiff's arrival at JCF (August 12, 2010), Plaintiff approached a corrections officer to ask why his property had not yet been returned to him.  Plaintiff alleges that the corrections officer then called the property room,

2

where Defendant Glenn King, also a corrections officer, was working.  Plaintiff alleges that Defendant King said Plaintiff's property had been sent to another facility.

Plaintiff spoke with Defendant King in the property room the following day (August 13, 2010).  Plaintiff alleges that Defendant King told him that his property was not there.  Plaintiff claims he then informed Defendant King that he would file a grievance regarding the failure to return his property.  At some point that day, Defendant King wrote an NOI alleging that Plaintiff's typewriter was contraband because its identifying numbers had been altered.

Plaintiff was called to the property room by Defendant King the next day (August 14, 2010) and presented with his TV and duffel bag.  Plaintiff alleges that Defendant King had removed the seals from his duffel bag and removed property from it, including clothing, food and drink, and a headphone extension cord.  Plaintiff further claims that when he asked about the missing property, Defendant King became belligerent and ordered Plaintiff out of the property room.  Later that day, Plaintiff requested a grievance form from another corrections officer, who allegedly told him that Defendant King had admitted he took Plaintiff's property.

Two days later (August 16, 2010), a corrections officer directed Plaintiff to pack his property into his duffel bag per the instructions of Defendant Diane

Burge-Coggins, then an Assistant Resident Unit Supervisor.   Though Plaintiff asserted that he was not required by policy to pack his TV into the duffel bag, the officer ordered him to do so and ultimately found that his duffel bag was overpacked.

Later that day, Plaintiff asked Defendant Coggins if he could remove legal materials and some hygiene items from his footlockers (which, unlike the duffel bag, had not been returned to him).   Plaintiff claims that Defendant Coggins refused, citing the finding that Plaintiff's duffel bag was overpacked and insisting that his TV must be packed in the duffel bag.   Plaintiff alleges that he told Defendant Coggins he would file a grievance against her, and she responded that he would never receive any of his property when she was done with him.   Plaintiff alleges that he missed a filing deadline in Michigan state court as a result of Defendant Coggins's refusal to let him access his legal materials.[1]

On August 25, 2010, Defendant Coggins conducted a hearing on the NOI concerning Plaintiff's typewriter.   Defendants claim that Plaintiff agreed to the destruction of the typewriter.   Plaintiff denies that he ever agreed to dispose of any of his property.

---

[1] The Court recounts factual background on Plaintiff's litigation in Michigan state court below, in its discussion of Plaintiff's access-to-courts claim.

4

On September 2, 2010, Defendant Coggins held a hearing on the NOI concerning Plaintiff's footlockers. She ruled that for 30 days the prison would preserve one of Plaintiff's footlockers, along with its contents, and any property Plaintiff wished to send home. Any property that Plaintiff had not sent home or transferred to a new footlocker after 30 days would be treated as abandoned. Plaintiff alleges that on the same day, Defendant Coggins visited his cell and threw away some of his personal photographs, religious materials, personal letters, and grievances, despite Plaintiff's assertion that he wanted to send the items home.

On September 10, 2010, a hearing officer determined that none of Plaintiff's legal materials were contraband. According to Plaintiff, the officer informed him that since Defendant Coggins had ordered the destruction of his old footlocker devoted to legal materials, the prison was required to order him a new legal footlocker and deduct the cost from his account. Plaintiff claims that he asked Defendant Coggins to do so and she refused.

Plaintiff ordered a new footlocker and picked it up from the property room on October 7, 2010. He claims that he tried to transfer some property into his new footlocker and to send other property home, but Defendant King did not allow him to do so. Defendant King, on the other hand, claims that Plaintiff transferred items from his old footlocker to the new one that day. Plaintiff alleges that Defendant

King did not allow him to transfer property from his old footlocker until November 4, 2010.  According to Plaintiff, he noticed that some of his property had been removed from his footlocker, and Defendant King refused to let him send property home.

On November 14, 2010, Plaintiff was informed that Defendant Coggins told Defendant King to dispose of his old footlockers and remaining property.  Plaintiff alleges that this was contrary to MDOC policy because Plaintiff had appealed the finding that his old footlockers were not in working order, and this appeal was still pending.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff brings a First Amendment retaliation claim against Defendants Coggins and King, as well as a claim that Defendant Coggins violated his constitutional right to access the courts. Defendants move for summary judgment on both claims. They argue that Plaintiff's retaliation claim fails because there is no genuine issue of material fact regarding whether the alleged unauthorized destruction of Plaintiff's property was motivated by Plaintiff's use of the grievance process. They argue that Plaintiff's access-to-courts claim also fails because there is no genuine issue of material fact regarding whether Plaintiff suffered an "actual injury" when Defendant Coggins allegedly prevented him from filing a motion for reconsideration in Michigan state court. Further, Defendants argue that they are immune to both claims under the Eleventh Amendment and the doctrine of qualified immunity. Finally, Defendants argue that even if the claims are allowed to proceed, they are entitled to partial summary judgment on the issue of damages under the Prison Litigation Reform Act. The Court will address each argument in turn.

## I.      First Amendment Retaliation

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Defendants concede that Plaintiff engaged in protected conduct by filing (and promising to file) grievances, and that the alleged unauthorized destruction of Plaintiff's property constitutes an adverse action.   They argue, however, that there is no genuine issue of material fact regarding whether Defendants disposed of Plaintiff's property *because of* his protected conduct.

Courts employ a burden-shifting analysis when evaluating the causation element of a First Amendment retaliation claim.  "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant," who must then "show that he would have taken the same action in the absence of the protected activity." *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)).  A plaintiff may appropriately rely on "circumstantial evidence, like

the timing of events or the disparate treatment of similarly situated individuals." *Id.*

Defendants fail to meet their burden, as summary judgment movants, of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In *Thaddeus-X*, the Sixth Circuit, sitting en banc, held that prison officials had failed to meet this burden because they "ha[d] done little more than deny the allegations [of First Amendment retaliation]." 175 F.3d at 399 (citing *id.*). A prisoner had alleged that the defendants retaliated against him by moving him adjacent to mentally ill inmates on the lowest floor of the administrative segregation area. *Id.* at 384. The plaintiff claimed that prisoners were typically moved to that floor only for violating *particular* rules, and even then they were moved to the other side of the floor. *Id.* at 399 n.15. The defendants responded to these allegations only by asserting that they had moved the plaintiff as they did because he had violated an unspecified rule. *Id.* The Sixth Circuit held that the defendants' "summary denials" of the plaintiff's allegations did not satisfy their burden on their motion for summary judgment. *Id.* at 399-400.

Here, Defendants similarly fail to meet their burden.  Defendants state that in Defendant King's affidavit, he explains that "he issued an NOI against Plaintiff regarding his property out of the need to follow MDOC policy which requires that excess property be held to a minimum."  This is inaccurate, or at least misleading; Defendant King explains that a different correctional officer wrote the NOI concerning Plaintiff's excess property.  Defendant King acknowledges that he issued an NOI concerning Plaintiff's typewriter, asserting that he did so because its identifying numbers had been altered, rendering it contraband under MDOC policy.  He asserts that his actions were not influenced by any grievances filed by Plaintiff, but instead were "pursuant to MDOC policy, and in the interest of limiting contraband items from entering the housing unit at JCF."

Aside from their (partially inaccurate) citations to Defendant King's affidavit, Defendants make almost no reference to the facts of the case in arguing that there is no genuine issue of material fact.  They simply assert, without citation to the record, that "Plaintiff was in excess of the allowable property pursuant to PD 04.07.112 and hearings were held to address the issues."  The remainder of their argument consists of an admonition that courts should defer to prison officials and "not lightly interfere with prison management."

Defendants thus fail even to deny all of Plaintiff's allegations. Plaintiff brings his retaliation claim against both Defendant Coggins and Defendant King, but Defendants' argument concerning the retaliation claim makes no mention of Plaintiff's accusations against Defendant Coggins. Further, Plaintiff's retaliation claim against Defendant King is not premised solely on his issuance of an NOI— the only adverse action specifically addressed in Defendants' argument. For instance, Plaintiff alleges that in the day following Plaintiff's threat to file a grievance against Defendant King, Defendant King retaliated by unsealing Plaintiff's duffel bag and removing property. Defendant King does not specifically deny this allegation in his affidavit, and Defendants' retaliation argument does not mention it.

The Court concludes that Defendants have not met their initial responsibility to identify portions of the record demonstrating that Plaintiff's retaliation claim presents no genuine issue of material fact. However, the Court is not confident that the claim does present such a genuine issue. Therefore, the Court will postpone ruling on Defendants' request for summary judgment on the retaliation claim pending Defendants' submission of supplemental briefing. As the Court orders below, Defendants will submit a supplemental brief on their argument that there is no genuine issue of material fact on the causation element of Plaintiff's

11

retaliation claim by February 2, 2015.  Plaintiff may submit a response to the supplemental brief by February 12, 2015.

## II.    Denial of Access to the Courts

The Constitution guarantees a right of access to the courts.  *Christopher v. Harbury*, 536 U.S. 403, 415 & n.12 (2002).  Prisoners may invoke this right to sue prison officials for impeding their past attempts to seek relief through litigation. *See id.* at 414.  However, the Supreme Court has limited this right by recognizing an "actual injury" requirement for such claims.  *E.g., Brown v. Matauszak*, 415 Fed. App'x 608, 612 (6th Cir. Jan. 31, 2011) (unpublished) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  A prisoner may hold a prison official liable for depriving him of a chance to present legal arguments in court only if those arguments would have been "non-frivolous."  *Id.* (citing *Lewis*, 518 U.S. at 353 &n.3); *see also id.* at 614.

Michigan Court Rule 6.502 authorizes a convicted criminal defendant to challenge his conviction by filing a motion for relief from judgment.  Generally, however, a defendant may only file one such motion with regard to a particular conviction; successive motions for relief from judgment are barred unless "based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such

12

motion."  MICH. CT. R. 6.502(E).  A defendant may move for reconsideration of the summary dismissal of his motion for relief from judgment within 21 days. MICH. CT. R. 6.504(B)(3).  The motion for reconsideration must "state why the court's decision was based on a clear error and that a different decision must result from correction of the error."  *Id.*

Here, Plaintiff claims that Defendant Coggins violated his constitutional right of access to the courts by denying him access to his legal materials, causing him to miss the 21-day deadline for filing a motion of reconsideration under Michigan Court Rule 6.504(B)(3).  Defendant Coggins argues that she is entitled to summary judgment on this claim because there is no genuine issue of material fact regarding whether Plaintiff's contemplated motion for reconsideration would have presented non-frivolous arguments.

To properly evaluate Plaintiff's forfeited motion, the Court will recount the facts leading up to its contemplated filing.  Plaintiff was tried and convicted several months after a codefendant was separately tried and convicted.  Plaintiff filed a motion for relief from judgment in Michigan state court many years later, which was denied on September 30, 2005.  In 2010, Plaintiff's codefendant executed an affidavit in which he exonerated Plaintiff, taking sole responsibility

for the crime.   Plaintiff subsequently filed a second motion for relief from judgment in Michigan state court, relying in part on the affidavit.

The court denied Plaintiff's second motion for relief from judgment as an improper successive motion, since it was not based on "new evidence that was not discovered before the first such motion."   MICH. CT. R. 6.502(E).   The court surveyed persuasive authority and adopted a distinction between newly "discovered" evidence and evidence that became *available* to the defendant only after his prior motion, but was known to him before.   The court held that the codefendant's exoneration of Plaintiff in the affidavit was not newly "discovered" evidence because, as Plaintiff knew or should have known, the codefendant could have supplied the same exonerating testimony even before Plaintiff's conviction. Plaintiff intended to file a motion for reconsideration of the court's decision, but Defendant Coggins allegedly caused him to miss the filing deadline.

The Court agrees with Defendant Coggins that Plaintiff has failed to identify a non-frivolous basis for the forfeited motion for reconsideration.   If Plaintiff had filed the motion, he would have been required to "state why the court's decision was based on a clear error and that a different decision must result from correction of the error."   MICH. CT. R. 6.504(B)(3).   Plaintiff argues that he would have identified such a clear error: the Circuit Court erroneously stated that Plaintiff and

14

his codefendant were tried jointly.  This misconception would have precluded full consideration of Plaintiff's attack on his conviction, since Plaintiff argues that their *separate* trials enabled a prosecutor to convict Plaintiff and his codefendant through the use of inconsistent theories.  However, Plaintiff's substantive attack on his conviction was not at issue in the Circuit Court's opinion, which denied his second motion as procedurally barred for failure to present evidence discovered after Plaintiff's first motion.  Plaintiff has not claimed that he was unaware, prior to filing his first motion for relief from judgment, of the alleged inconsistencies in the evidence presented at the separate trials.  He has therefore identified no arguable basis for his claim that the Circuit Court would have found newly discovered evidence if he had corrected the court's misconception regarding a joint trial.

Plaintiff has suggested other grounds for his contemplated motion for reconsideration, but they are even less arguable.  Plaintiff points out that the Circuit Court inaccurately stated that he and his codefendant were convicted of the same offenses, when in fact his co-defendant was convicted of first-degree murder, rather than second-degree, and was convicted of an additional firearm offense. This fact, however, is irrelevant to the court's holding that Plaintiff's successive motion was not based on newly discovered evidence.  Plaintiff also states that he

would have asked the court to hold an evidentiary hearing regarding the reliability of his codefendant's affidavit. The court did mention that the affidavit was unreliable, but this was at most an *alternative* basis for the court's denial of Plaintiff's successive motion. In any case, Plaintiff has not explained how he would have convinced the court that it was clear error to judge the affidavit unreliable without holding an evidentiary hearing.

Plaintiff has failed to identify a non-frivolous basis for his contemplated motion for reconsideration, and therefore failed to demonstrate a genuine issue of material fact regarding whether his inability to timely file the motion caused him an "actual injury." Defendant Coggins is therefore entitled to summary judgment on Plaintiff's access-to-courts claim against her. However, as this Court recognized in its prior Order [32] declining to dismiss Plaintiff's access-to-courts claim, the factual allegations underlying the claim overlap with a portion of the allegations underlying Plaintiff's retaliation claim. Specifically, Plaintiff alleges that Defendant Coggins denied him access to his legal materials *in retaliation for* his use of the grievance process. The Court holds that this denial did not cause Plaintiff an "actual injury" as defined with respect to an independent access-to-courts claim. The Court does not now address, however, whether the denial constitutes an "adverse action" sufficient to sustain a retaliation claim.

16

## III.    Immunity

Plaintiff's complaint indicates that he is suing Defendants for monetary damages both in their individual capacities and in their official capacities.  As to Plaintiff's suit against Defendants in their *individual* capacities, Defendants assert, in a cursory manner, that they are entitled to qualified immunity because "[Plaintiff's] constitutional rights were not violated and Defendants acted reasonably and in the scope of their authority."   The prohibition on First Amendment retaliation is clearly established, and a reasonable prison official would know it is illegal to take adverse action against a prisoner in retaliation for complaints.  *See  Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).   Therefore, Defendants are not entitled to qualified immunity on the First Amendment retaliation claim.  *See id.*

Defendants argue that Plaintiff's claim for damages against them in their *official* capacities is barred by the Eleventh Amendment.  The Court agrees.  *See, e.g.*, *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994)) (holding a Michigan prisoner's damages claim against a prison official in her official capacity barred by the Eleventh Amendment because Michigan had not consented to such a suit).  However, this is of little practical significance; if Plaintiff's retaliation claim

17

against Defendants in their individual capacities survives, he may still hold Defendants liable for actions taken in their capacity as MDOC officials. *Hardin v. Straub*, 954 F.2d 1193, 1200-01 (6th Cir. 1992) (rejecting argument that "if [a state prison official's] actions were taken as part of his job, then they were taken in his official capacity and that Eleventh Amendment immunity applies").

## IV.   Damages

Defendants move for partial summary judgment on the issue of damages, seeking to preclude Plaintiff from recovering anything but nominal and/or punitive damages.  Defendants argue that Plaintiff's recovery is limited in this manner by the Prison Litigation Reform Act (PLRA), which provides that prisoners may not recover "for mental or emotional injury while in custody without a showing of physical injury."  42 U.S.C. § 1997e(e).  Defendants acknowledge that the Court has previously held that the PLRA is unconstitutional to the extent that it precludes recovery for mental or emotional damages caused by violations of plaintiffs' First Amendment rights.  *Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 816 (E.D. Mich. 2006).  Defendants ask the Court to reverse itself, citing contrary decisions by other courts and the plain language of the PLRA.  Defendants, however, cite no authority binding on this Court.  The Court affirms its holding in *Siggers-El* for the reasons stated therein.  Accordingly, the Court denies Defendants' request for

partial summary judgment on the issue of damages to the extent that it is based on application of the PLRA.

However, the Court remains uncertain as to the factual basis for Plaintiff's claim for damages. Defendants may be entitled to partial summary judgment on Plaintiff's retaliation claim, limiting Plaintiff to recovery of nominal and/or punitive damages, if Plaintiff cannot identify a genuine issue of material fact regarding whether he suffered actual damages as a result of Defendants' violations of his *constitutional* rights. The Court therefore directs Plaintiff to submit, by February 2, 2015, a supplemental brief on the issue of the damages he has suffered as a result of Defendants' alleged retaliation for his exercise of his First Amendment rights. Defendants may submit a response to the supplemental brief by February 12, 2015.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [44] is **GRANTED** with respect to Plaintiff's access-to-courts claim.

**IT IS FURTHER ORDERED** that the parties will submit supplemental briefs concerning Defendants' request for summary judgment on Plaintiff's retaliation claim. By February 2, 2015, Defendants will submit a supplemental

brief on their argument that there is no genuine issue of material fact on the causation element of Plaintiff's retaliation claim. By the same date (February 2, 2015), Plaintiff will submit a supplemental brief on his evidence of damages he has suffered as a result of Defendants' alleged retaliation for his exercise of his First Amendment rights. Each party may submit a response to the opposing party's supplemental brief by February 12, 2015.

**IT IS FURTHER ORDERED** that due to the continued pendency of Defendants' Motion for Summary Judgment [44], the trial in this case, currently scheduled to begin on January 20, 2015, is adjourned. The trial will be rescheduled following the Court's final resolution of Defendants' Motion for Summary Judgment.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow

Dated: January 13, 2015                    Senior United States District Judge
_____

**CERTIFICATE OF SERVICE**

I hereby certify on January 13, 2015 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 13, 2015: **Jerome Sweezer.**

s/Michael E. Lang
Case Manager to
District Judge Arthur J. Tarnow
(313) 234-5182
