UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME SWEEZER,

Plaintiff,

v.

DEBRA SCUTT, ET AL.,

Defendants.

_____/

Case No. 11-12351

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE MICHAEL J.
HLUCHANIUK

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [44] AND CLOSING CASE**

On May 27, 2011, Plaintiff, a pro se prisoner, brought the instant suit under 42 U.S.C. § 1983 against Defendant Coggins, Defendant King, and other defendants. On September 28, 2012, the Court entered an Order [32] dismissing the other defendants and several of Plaintiff's claims. However, the Court ruled that Plaintiff could proceed with his First Amendment retaliation claim against Defendant Coggins and King, as well as his claim that Defendant Coggins violated his constitutional right of access to the courts. On October 5, 2012, the Court issued an Order [34] staying the case pending the appointment of pro bono counsel

1

for Plaintiff. No pro bono counsel had agreed to represent Plaintiff by February 7, 2014, when the Court issued an Order Vacating Stay [37]. On October 3, 2014, Defendants filed a Motion for Summary Judgment [44] on the remaining claims. Plaintiff filed a Response [45] on October 21, 2014.

On January 13, 2015, the Court issued an Order [46] granting Defendants' Motion for Summary Judgment [44] with respect to Plaintiff's access-to-courts claim. The Court postponed its decision on the motion with respect to Plaintiff's retaliation claim pending the submission of supplemental briefs. Plaintiff submitted a Supplemental Brief [47] on January 30, 2015, and Defendants filed their own Supplemental Brief [49] on February 3, 2015. The parties also responded to each other's supplemental briefs: Defendants filed their Supplemental Response [52] on February 12, 2015, and Plaintiff filed his Supplemental Response [53] on February 18, 2015.

For the reasons stated below, Defendants' Motion for Summary Judgment [44] is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff is a prisoner confined by the Michigan Department of Corrections (MDOC). On August 11, 2010, Plaintiff was transferred from the Ryan Correctional Facility to the G. Robert Cotton Correctional Facility (JCF) in

Jackson, Michigan. Plaintiff brought items of personal property to JCF, including a TV, a typewriter, a duffel bag containing personal items, and two footlockers containing other personal items and legal materials. On the day of the transfer, former defendant Richard McGill, a corrections officer, wrote a Notice of Intent to Conduct an Administrative Hearing (NOI) alleging that Plaintiff's footlockers were contraband because they contained excess property.

The day after Plaintiff's arrival at JCF, August 12, 2010, Plaintiff approached a corrections officer to ask why his property had not yet been returned to him. Plaintiff alleges that the corrections officer then called the property room, where Defendant Glenn King, also a corrections officer, was working. Plaintiff alleges that Defendant King said Plaintiff's property had been sent to another facility. The same day, Defendant King wrote an NOI alleging that Plaintiff's duffel bag contained excess property.

Plaintiff spoke with Defendant King in the property room the following day, August 13, 2010. Plaintiff alleges that Defendant King told him that his property was not there. Plaintiff claims he then informed Defendant King that he would file a grievance regarding the failure to return his property. At some point that day, Defendant King wrote an NOI alleging that Plaintiff's typewriter was contraband because its identifying numbers had been altered.

3

Plaintiff was called to the property room by Defendant King the next day, August 14, 2010, and presented with his TV and duffel bag. Plaintiff alleges that Defendant King had removed the seals from his duffel bag and removed property from it, including clothing, food and drink, and a headphone extension cord. Plaintiff further claims that when he asked about the missing property, Defendant King became belligerent and ordered Plaintiff out of the property room. Later that day, Plaintiff requested a grievance form from another corrections officer, who allegedly told him that Defendant King had admitted he took Plaintiff's property.

Two days later, August 16, 2010, a corrections officer directed Plaintiff to pack his property into his duffel bag per the instructions of Defendant Diane Burge-Coggins, then an Assistant Resident Unit Supervisor. Though Plaintiff asserted that he was not required by policy to pack his TV into the duffel bag, the officer ordered him to do so and ultimately found that his duffel bag was overpacked.

Later that day, Plaintiff asked Defendant Coggins if he could remove legal materials and some hygiene items from his footlockers (which, unlike the duffel bag, had not been returned to him). Plaintiff claims that Defendant Coggins refused, citing the finding that Plaintiff's duffel bag was overpacked and insisting that his TV must be packed in the duffel bag. Plaintiff alleges that he told

4

Defendant Coggins he would file a grievance against her, and that she responded that he would never receive any of his property when she was done with him.

On August 25, 2010, Defendant Coggins conducted a hearing on the NOI concerning Plaintiff's typewriter. Defendants claim that Plaintiff agreed to the destruction of the typewriter. Plaintiff denies that he ever agreed to dispose of any of his property.

On September 2, 2010, Defendant Coggins held a hearing on the NOI concerning Plaintiff's footlockers. She ruled that for 30 days the prison would preserve one of Plaintiff's footlockers, along with its contents, and any property Plaintiff wished to send home. Any property that Plaintiff had not sent home or transferred to a new footlocker after 30 days would be treated as abandoned. Plaintiff alleges that on the same day, Defendant Coggins visited his cell and threw away some of his personal photographs, religious materials, personal letters, and grievances, despite Plaintiff's assertion that he wanted to send the items home.

On September 10, 2010, a hearing officer determined that none of Plaintiff's legal materials were contraband. According to Plaintiff, the officer informed him that since Defendant Coggins had ordered the destruction of his old footlocker devoted to legal materials, the prison was required to order him a new legal

5

footlocker and deduct the cost from his account. Plaintiff claims that he asked Defendant Coggins to do so and she refused.

Plaintiff ordered a new footlocker and picked it up from the property room on October 7, 2010. He claims that he tried to transfer some property into his new footlocker and to send other property home, but Defendant King did not allow him to do so. Defendant King, on the other hand, claims that Plaintiff transferred items from his old footlocker to the new one that day. Plaintiff alleges that Defendant King did not allow him to transfer property from his old footlocker until November 4, 2010. According to Plaintiff, he noticed that some of his property had been removed from his footlocker, and Defendant King refused to let him send property home.

On November 14, 2010, Plaintiff was informed that Defendant Coggins told Defendant King to dispose of his old footlockers and remaining property. Plaintiff alleges that this was contrary to MDOC policy because Plaintiff had appealed the finding that his old footlockers were not in working order, and this appeal was still pending.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Courts employ a burden-shifting analysis when evaluating the causation element of a First Amendment retaliation claim. "Once the plaintiff has met his burden of

7

establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant," who must then "show that he would have taken the same action in the absence of the protected activity." *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). A plaintiff may appropriately rely on "circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals." *Id.*

For a plaintiff hoping to proceed to trial on a retaliation claim, "the summary judgment hurdle is not insubstantial." *Id.* "[B]are allegations of malice" do not suffice to raise a genuine issue of material fact on the causation element. *Id.* (quoting *Crawford-El v. Britton*, 118 S. Ct. 1584, 1592 (1998)); *see also Lewis v. Jarvie*, 20 Fed. App'x 457, 459 (6th Cir. Sept. 26, 2001) (unpublished) (characterizing a plaintiff's causation evidence as "bare allegations of malice" where the plaintiff assumed the defendants' adverse actions were based in a retaliatory motive simply because they were taken some time after the plaintiff filed grievances); *Cantley v. Armstrong*, 391 Fed. App'x 505, 506-07 (6th Cir. Aug. 17, 2010) (unpublished) (holding that a plaintiff's vague allegation that a defendant had confronted him about a grievance filed the previous week was "wholly insufficient" to demonstrate that the plaintiff's transfer was caused by his

8

protected conduct, particularly because the plaintiff had failed to show that the defendant was involved in the transfer decision).

Defendants argue that there is no genuine issue of material fact regarding whether Defendants disposed of Plaintiff's property *because of* his protected conduct. Both Defendants have submitted affidavits in which they address their alleged adverse actions against Plaintiff and deny that they were motivated by Plaintiff's use or threatened use of the grievance process.

The Court concludes that Plaintiff has failed to raise a genuine issue of material fact regarding whether Defendants acted in retaliation for his protected conduct. Plaintiff relies on circumstantial evidence, some of which actually cuts against his claim. For instance, Plaintiff points to the fact that Defendants relied on Officer McGill's NOI regarding excess property. As the Court stated in its September 28, 2012, Order Adopting in Part Report and Recommendation [32], "Plaintiff makes no factual allegations showing that [Officer] McGill's conduct was retaliatory, or causally linked to Plaintiff's Constitutionally protected rights." Defendants' reliance on Officer McGill's nonretaliatory NOI therefore undermines Plaintiff's claim of retaliatory motive.

The timing of events further undermines Plaintiff's claim. Plaintiff cites Defendant King's August 12 NOI as evidence that Defendant King did, in fact,

9

violate MDOC policy by cutting the seals off of Plaintiff's duffel bag while Plaintiff was not present. However, Defendant King wrote the August 12 NOI the day *before* Plaintiff says he first threatened to file a grievance against him. Defendant King's decision to remove the seals (whether in violation of policy or not) and his allegation of excess property therefore could not have been in retaliation for Plaintiff's threatened grievance. Similarly, Plaintiff alleges that even before he threatened to file a grievance against Defendant Coggins, she ordered a "pack up" of Plaintiff's property, concluded he had excess property, and refused to let him remove items from his footlockers. These allegations suggest that Defendant Coggins's concern about Plaintiff's excess property predated his protected conduct, supporting her sworn testimony that this concern was the motivation for her later actions, rather than a mere pretext for retaliation.

The Court acknowledges that Plaintiff challenges adverse actions taken *after* his protected conduct. However, a plaintiff cannot raise a genuine issue of material fact on a retaliation claim simply by alleging that adverse actions were taken against him sometime after he threatened to file a grievance. *See Lewis*, 20 Fed. App'x at 459. Plaintiff's evidence of retaliatory motive consists largely of allegations that Defendants' post-grievance actions were not in accord with MDOC policy. But these allegations are weak evidence of retaliatory motive even if true,

10

since deviations from policy can occur for many reasons. Indeed, Defendant King appears to have violated MDOC Policy Directive 04.07.112(Z) by removing the seals from Plaintiff's duffel bag while Plaintiff was not present—but he did not do so in retaliation for Plaintiff's protected conduct, since that conduct had not yet occurred.

The Court is mindful of the Sixth Circuit's instruction that "the summary judgment hurdle is not insubstantial" even with respect to retaliation claims. *Thaddeus-X*, 175 F.3d at 399. Plaintiff has failed to produce sufficient evidence of retaliatory motive to overcome that hurdle, particularly since Defendants' actions after Plaintiff threatened to use the grievance process were consistent with their actions before. In sum, Plaintiff has failed to raise a genuine issue of material fact on the causation element of his retaliation claim, and Defendants are therefore entitled to summary judgment.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [44] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **CLOSED**.

**SO ORDERED**.

                                                                               <u>s/Arthur J. Tarnow</u>
                                                                               Arthur J. Tarnow
Dated: March 31, 2015               Senior United States District Judge